ORAL ARGUMENT NOT YET SCHEDULED
No. 22-1073 (and consolidated cases)

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

SINCLAIR WYOMING REFINING COMPANY LLC, *et al.*,
*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S. REAGAN,
ADMINISTRATOR,
*Respondents*,

On Petition for Review of Final Agency Action
of the U.S. Environmental Protection Agency

## BRIEF OF RENEWABLE FUEL PRODUCERS AS INTERVENORS IN SUPPORT OF THE RESPONDENT

Matthew W. Morrison
Cynthia Cook Robertson
Shelby L. Dyl
PILLSBURY WINTHROP SHAW
  PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
(202) 663-8007
*Counsel for Renewable Fuels
Association, Growth Energy, American
Coalition for Ethanol, National Farmers
Union, and National Corn Growers
Association*

November 1, 2023

David M. Lehn
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
(202) 274-1126
*Counsel for Growth Energy*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a), Intervenors Renewable Fuels Association, Growth Energy, American Coalition for Ethanol, National Farmers Union, National Corn Growers Association, and Growth Energy, through undersigned counsel, hereby certify the following as to parties, rulings, and related proceedings in this case:

## *PARTIES, INTERVENORS, AND AMICI*

## A.    PETITIONERS

Review of April 2022 Denial of Petitions

- Sinclair Wyoming Refining Company LLC, and Sinclair Casper Refining Company LLC, No. 22-1073

- HF Sinclair Refining & Marketing LLC; HF Sinclair Cheyenne Refining LLC; HF Sinclair Woods Cross Refining, LLC, No. 22-1075

- Delek US Holdings, Inc., No. 22-1100

- Cenovus Energy Inc., and Superior Refining Company LLC, No. 22-1102

- CHS, Inc., No. 22-1109

- Cross Oil Refining & Marketing, Inc., No. 22-1114

- United Refining Company, No. 22-1115

- Kern Oil & Refining Co., No. 22-1122

- Wynnewood Refining Company, LLC, No. 22-1124

- American Refining Group, Inc., Nos. 22-1128 and 22-1199

- Calumet Montana Refining, LLC, and Calumet Shreveport Refining, LLC, No. 22-1129

- CountryMark Refining and Logistics, LLC, Nos. 22-1130 and 22-1165

- Ergon Refining, Inc., No. 22-1131

- Hunt Refining Company, No. 22-1132

- Par Hawaii Refining, LLC; U.S. Oil & Refining Company; and Wyoming Refining Company, Nos. 22-1133 and 22-1219

- Placid Refining Company LLC, No. 22-1134

- San Joaquin Refining Co., Inc., No. 22-1135

Review of June 2022 Denial of Petitions

- Wynnewood Refining Company, LLC, No. 22-1178

- Delek US Holdings, Inc.; Lion Oil Company, LLC; Alon Refining Krotz Springs, Inc.; and Delek Refining, Ltd., No. 22-1181

- Sinclair Wyoming Refining Company LLC; and Sinclair Cas- per Refining Company LLC, No. 22-1183

- CHS, Inc., No. 22-1185

- HF Sinclair Refining & Marketing LLC; HF Sinclair Cheyenne Refining LLC; HF Sinclair Woods Cross Refining, LLC, No. 22-11865

- Kern Oil & Refining Co., No. 22-1187

- Cross Oil Refining & Marketing, Inc., No. 22-1188

- United Refining Company, No. 22-1189

- American Refining Group, Inc., Nos. 22-1190 and 22-1246

- Calumet Montana Refining, LLC, and Calumet Shreveport Refining, LLC, No. 22-1191

- CountryMark Refining and Logistics, LLC, Nos. 22-1192 and 22-1238

- Ergon Refining, Inc., and Ergon-West Virginia, Inc., No. 22-1193

- Hunt Refining Company, No. 22-1194

- Par Hawaii Refining, LLC; U.S. Oil & Refining Company; and Wyoming Refining Company, Nos. 22-1195 and 22-1240

- Placid Refining Company LLC, No. 22-1196

- San Joaquin Refining Co., Inc., No. 22-1197

- The San Antonio Refinery LLC, No. 22-1198

**B.    RESPONDENTS**

- United States Environmental Protection Agency

## C.   INTERVENORS FOR RESPONDENT

- American Coalition for Ethanol

- Growth Energy

- National Corn Growers Association

- National Farmers Union

- Renewable Fuels Association

## D.   AMICI

- None

## E.   RULINGS UNDER REVIEW

Petitioners' Initial Joint Opening Brief accurately lists the rulings under review.

## F.   RELATED CASES

The following cases are related within the meaning of Circuit Rule 28(a)(1)(C)

- *Calumet Shreveport Refining, LLC, v. EPA*, Nos. 22-60266, 22-60425, 22-60433, 22-60434 (5th Cir.)

- *Hunt Refining Company v. EPA*, Nos. 22-11617, 12535 (11th Cir.)

- *Par Hawaii Refining, LLC, et al. v. EPA*, No. 23-1255 (D.C. Cir.) – consolidated with No. 23-1194 (D.C. Cir.)

- *Placid Refin. Company LLC v. EPA*, No. 23-1256 (D.C. Cir.) – consolidated with No. 23-1194 (D.C. Cir.)

- *San Joaquin Refin. Co., Inc. v. EPA*, No. 23-1257 (D.C. Cir.) – consolidated with No. 23-1194 (D.C. Cir.)

- *The San Antonio Refinery LLC v. EPA*, No. 23-1258 (D.C. Cir.) –consolidated with No. 23-1194 (D.C. Cir.)

- *Cross Oil Refin. & Mktg. Inc. v. EPA*, No. 23-1266 (D.C. Cir.) – consolidated with No. 23-1194 (D.C. Cir.)

- *American Refin. Group, Inc. v. EPA*, No. 23-2664 (3d Cir.)

- *Calumet Shreveport Refin., et al. v. EPA*, No. 23-60399 (5th Cir.)

- *Wynnewood Refin. Co., LLC v. EPA*, No. 23-60427 (5th Cir.)

- *Ergon Refin., Inc., et al. v. EPA*, No. 23-60492 (5th Cir.)

- *Countrymark Refin. and Logistics, LLC v. EPA*, No. 23-2766 (7th Cir.)

- *Cross Oil Refin. & Mktg. Inc. v. EPA*, No. 23-3101 (8th Cir.)

- *Calumet Montana Refin., LLC v. EPA*, No. 23-2183 (9th Cir.)

- *Par Hawaii Refin., LLC v. EPA*, No. 23-2185 (9th Cir.)

- *San Joaquin Refin. Co, Inc. v. EPA*, No. 23-2186 (9th Cir.)

- *Wyoming Refin. Company v. EPA*, No. 23-9582 (10th Cir.)

- *Hunt Refin. Company v. EPA*, No. 23-12347 (11th Cir.)

Dated: November 1, 2023                      /s/ *Matthew W. Morrison*
                                                          Matthew W. Morrison

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Intervenors Renewable Fuels Association, Growth Energy, American Coalition for Ethanol, National Farmers Union, National Corn Growers Association, and Growth Energy, through undersigned counsel, provide the following corporate disclosure statement:

The Renewable Fuels Association ("RFA") is a non-profit trade association. Its members are ethanol producers and supporters of the ethanol industry. It operates for the purpose of promoting the general commercial, legislative, and other common interests of its members. The Renewable Fuels Association does not have a parent company and issues no stock.

The American Coalition for Ethanol ("ACE") is a non-profit trade association. Its members include ethanol and biofuel facilities, agricultural producers, ethanol industry investors, and supporters of the ethanol industry. ACE promotes the general commercial, legislative, and other common interests of its members. ACE does not have a parent company and issues no stock.

Growth Energy is a non-profit trade association. Its members are ethanol producers and supporters of the ethanol industry. It operates to promote the general commercial, legislative, and other common interests of its members. Growth Energy does not have a parent company and issues no stock.

The National Farmers Union ("NFU") is a non-profit trade association. Its members include farmers who produce biofuel feedstocks and consume large quantities of fuel. The NFU promotes the general commercial, legislative, and other common interests of its members. It does not have a parent company and issues no stock.

The National Corn Growers Association ("NCGA") is a non-profit trade association. Its members are corn farmers and supporters of the agriculture and ethanol industries. NCGA promotes the general commercial, legislative, and other common interests of its members. NCGA does not have a parent company and issues no stock.

November 1, 2023                          /s/ *Matthew W. Morrison*
                                          Matthew W. Morrison

## STATEMENT REGARDING ORAL ARGUMENT

Intervenors Renewable Fuel Association ("RFA"), American Coalition for Ethanol ("ACE"), Growth Energy, National Farmers Union ("NFU"), and National Corn Growers Association ("NCGA") request oral argument. Intervenors believe that the Court would benefit from argument addressing the application of 42 U.S.C. §7607(b)(1)'s venue provision to the agency actions challenged here.

On the merits, the petitions raise complex legal and record issues. The administrative record includes a significant amount of technical material, including economic analysis. Adjudicating the merits of the petitions for review will therefore require the Court to consider many complex issues and a substantial amount of information. The Court would therefore benefit from oral argument.

November 1, 2023                                    /s/ *Matthew W. Morrison*
                                                    Matthew W. Morrison

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ i

CORPORATE DISCLOSURE STATEMENT ...................................... vii

STATEMENT REGARDING ORAL ARGUMENT ........................... ix

TABLE OF CONTENTS ..................................................................x

TABLE OF AUTHORITIES ......................................................... xii

GLOSSARY .............................................................................. xvii

INTRODUCTION ...........................................................................1

JURISDICTION ..............................................................................3

STATEMENT OF ISSUES .............................................................3

STATUTES AND REGULATIONS ................................................4

STATEMENT OF THE CASE ........................................................4

    A.    The Renewable Fuel Standard Program and Small Refinery Exemptions ......................................................................4

    B.    The 2016-2018 SREs .................................................6

    C.    EPA's April and June Denials ...................................8

    D.    Judicial Challenges ...................................................9

ARGUMENT ................................................................................10

I.    VENUE IS PROPER ONLY IN THIS COURT .....................10

II.    EPA'S APPROACH IS STATUTORILY REQUIRED ..............12

    A.    EPA's Statutory Interpretation and RIN Passthrough Finding Neither Eliminate nor Contravene the Statute's Exemption Provision ...................................................................13

    B.    EPA Did Not Redefine the Statutory Phrase "Disproportionate Economic Hardship" .......................................................15

    C.    EPA Did Not Impermissibly Rely on the Tenth Circuit's Decision in *RFA* ....................................................16

    D.    EPA's RIN Cost Passthrough Determination is Not New .................17

    E.    EPA Complied with its Obligation to Consult with DOE....................18

F.     EPA's Evaluation of the SRE Petitions Was Sufficiently
       Individualized ......................................................................................20

III.    EPA'S DECISIONS ARE NOT IMPERMISSIBLY RETROACTIVE
        AND DO NOT VIOLATE PETITIONERS' DUE PROCESS RIGHTS ......21

A.     Because the Denials Were Adjudications, EPA Had to Apply its
       Current Approach ...................................................................................22

B.     Petitioners Could Not Have Reasonably Relied on EPA's Prior
       Approach Because It Was Neither Clear Nor Settled .........................24

C.     The Denials' Have No Retroactive Effect Anyway, But
       Regardless, Their Effect Will Not Prejudice Petitioners.....................28

D.     Withholding the Denials' Retroactive Effect Would Undermine
       the Congressional Interests Behind the RFS Program .........................34

CONCLUSION .................................................................................................37

CERTIFICATE OF COMPLIANCE....................................................................38

CERTIFICATE OF SERVICE .............................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Biofuels Ass'n v. EPA,*
  792 F. App'x. 1 (D.C. Cir. 2019).........................................................................25

*Aliceville Hydro Assocs. v. FERC,*
  800 F.2d 1147 (D.C. Cir. 1986)...........................................................................36

*Alon Refining Krotz Springs, Inc v. EPA,*
  936 F.3d 628 (D.C. Cir. 2019).............................................................................18

*Am. Fuel & Petrochemical Mfrs. v. EPA,*
  937 F.3d 559 (D.C. Cir. 2019).......................................................................35, 36

*Americans for Clean Energy v. EPA,*
  864 F.3d 691 (D.C. Cir. 2017).................................................................34, 35, 36

*April 2022 Alternative Compliance Action,*
  EPA-HQ-OAR-2021-0566-0107 ..........................................................................35

*April 2022 Denial of Petitions for RFS Small Refinery Exemptions,*
  EPA-HQ-OAR-2021-0566-0106 ........................................................................3, 8

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) (Scalia, J., concurring) .................................................23, 24

*Calumet Shreveport Refin. Co., et al. v. EPA,*
  No. 22-60266 (5th Cir. Filed May 3, 2022)...........................................................9

*Cassell v. FCC,*
  154 F.3d 478 (D.C. Cir. 1998).......................................................................26, 33

*Catholic Health Initiatives Iowa Corp. v. Sebelius,*
  718 F.3d 914 (D.C. Cir. 2013).................................................................22, 23, 28

*SEC v. Chenery Corp.,*
  332 U.S. 194 (1947).............................................................................................23

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984).............................................................................................12

*Clark-Cowlitz Joint Operating Agency v. F.E.R.C.*,
  826 F.2d 1074 (D.C. Cir. 1987) (en banc) ...................................................*passim*

*Ergon-West Virginia, Inc. v. EPA*,
  896 F.3d 600 (4th Cir. 2018) ............................................................................18

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) .................................................................................22, 31

*Gen. Elec. Co. v. EPA*,
  53 F.3d 1324 (D.C. Cir. 1995) ....................................................................22, 31

*Growth Energy v. EPA*,
  5 F.4th 1 (D.C. Cir. 2021) ..................................................................................4

*Growth Energy v. EPA*,
  No. 22-1126 (D.C. Cir. Apr. 10, 2023), ECF #1994071 ...................................35

*Hermes Consol., LLC v. EPA*,
  787 F.3d 568 (D.C. Cir. 2015) ....................................................................18, 25

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
  141 S. Ct. 2172 (2021) ..........................................................................7, 14, 16

*Howmet Corp. v. EPA*,
  614 F.3d 544 (D.C. Cir. 2010) ..........................................................................22

*Hunt Refin. Co. v. EPA*,
  No. 22-11617 (11th Cir. filed May 12, 2022) ....................................................9

*Judulang v. Holder*,
  565 U.S. 42 (2011) ...........................................................................................23

*June 2022 Alternative Compliance Action*,
  EPA-HQ-OAR-2021-0566-0119 .................................................................6, 8, 9

*June 2022 Denial of Petitions for RFS Small Refinery Exemptions*,
  EPA-HQ-OAR-2021-0566-0117 .........................................................3, 8, 19, 33

*Kern Oil & Refin. Co. v. EPA*,
  2022 WL 3369528 (9th Cir. Aug. 16, 2022) .....................................................34

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)...........................................................................31

*McDonald v. Watt*,
    653 F.2d 1035 (5th Cir. 1981) .......................................................27

*Monroe Energy, LLC v. EPA*,
    750 F.3d 909 (D.C. Cir. 2014).............................................26, 31, 36

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) ....................18

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*,
    472 U.S. 237 (1985).........................................................................14

*Nat'l Petrochem. & Refiners Ass'n v. EPA*,
    630 F.3d 145 (D.C. Cir. 2010)............................................30, 31, 32

*Old Dominion Elec. Coop. v. FERC*,
    892 F.3d 1223 (D.C. Cir. 2018).......................................................29

*Qwest Servs. Corp. v. FCC*,
    509 F.3d 531 (D.C. Cir. 2007).........................................23, 27, 33, 36

*Renewable Fuel Ass'n v. EPA*,
    No. 19-1220 (D.C. Cir. filed Oct. 22, 2019), ECF #1812533 .......................7, 26

*Renewable Fuels Ass'n v. EPA*,
    948 F.3d 1206 (10th Cir. 2020) ..................................................*passim*

*Renewable Fuels Ass'n v. EPA*,
    No. 18-9533 (10th Cir. filed May 29, 2018), ECF #10562569 ...........................6

*S. Ill. Power Coop. v. EPA*,
    863 F.3d 666 (7th Cir. 2017) ............................................................11

*Satellite Bd. Co. v. FCC*,
    824 F.2d 1 (D.C. Cir. 1987)..............................................................30

*Schwartz v. FERC*,
    578 F.2d 417 (D.C. Cir. 1978)..........................................................25

*Sinclair Wyo. Refin. Co. v. EPA*,
    887 F.3d 986 (10th Cir. 2017) ...............................................................15, 22, 26

*Sinclair Wyo. Refin. Co. v. EPA*,
    No. 22-1073 (D.C. Cir. filed May 4, 2022) ....................................................9, 11

*Sinclair Wyoming Refining Co. v. EPA*,
    No. 22-1074 (D.C. Cir. Aug. 28, 2023), ECF #2014355 .................................28

*Texas Mun. Power Agency v. E.P.A.*,
    89 F.3d 858 (D.C. Cir. 1996) ...........................................................................11

*United Refining Co. v. EPA*,
    64 F.4th 448 (3d Cir. 2023) .........................................................................19, 25

*Verizon Telephone Companies v. FCC*,
    269 F.3d 1098 (D.C. Cir. 2001).........................................................................24

*Williams Nat. Gas Co. v. FERC*,
    3 F.3d 1544 (D.C. Cir. 1993) ......................................................................22, 24

*NLRB v. Wyman-Gordon Co.*,
    394 U.S. 759 (1969)..........................................................................................22

**Statutes and Codes**

United States Code
    Title 42, Section 7545(o)(2)(A)(i) ......................................................................4
    Title 42, Section 7545(o)(9)(A)(i) ......................................................................5
    Title 42, Section 7545(o)(9)(A)(ii)(I) ...............................................................19
    Title 42, Section 7545(o)(9)(A)(ii)(II)..........................................................5, 12
    Title 42, Section 7545(o)(9)(B)(i) ..........................................................5, 16, 19
    Title 42, Section 7607(b)(1)...................................................................3, 10, 11

Energy Independence and Security Act of 2007, Pub. L. No. 110–140, December
    19, 2007, 121 Stat. 1492 ..............................................................................12, 34

## Rules and Regulations

Federal Register

    Volume 86, 70,999 (Dec. 14, 2021) ..........................................................29

    Volume 86, 71,000................................................................................29, 30

    Volume 87, 24,300 (April 25, 2022) ....................................................3, 8

    Volume 87, 34,873 (June 8, 2022) .......................................................3, 8

    Volume 87, 54,158 (Sept. 2, 2022)..................................................13, 30

    Volume 87, 54,160.....................................................................................31

    Volume 87, 54,161.....................................................................................30

    Volume 87, 54,162-63...............................................................................33

    Volume 87, 80,582 (Dec. 30, 2022) ........................................................30

## Other Authorities

Dallas Burkholder, EPA Office of Transportation and Air Quality, EPA-HQ-OAR-2015-0111-0062, A Preliminary Assessment of RIN Market Dynamics, RIN Prices, and Their Effects (May 14, 2015)..........................................................17

Memorandum re Financial and Other Information to Be Submitted with 2016 RFS Small Refinery Hardship Exemption Requests 1-2 (Dec. 6, 2016), https://tinyurl.com/bdz3b24t............................................................................5, 6

Office of Policy and International Affairs, Dep't of Energy, Small Refinery Exemption Study: An Investigation into Disproportionate Economic Hardship 2, 22-23 (Mar. 2011)..............................................................................................6

# GLOSSARY

| | |
|---|---|
| April Denial | April 2022 Denial of Petitions for RFS Small Refinery Exemptions, 87 Fed. Reg. 24300 (Apr. 25, 2022) |
| April 2022 Alternative Compliance Action | April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries, 87 Fed. Reg. 24294 (Apr. 25, 2022) |
| CAA | The Clean Air Act, 42 U.S.C. §7401 et seq. (1970) |
| Denials | April 2022 Denial of Petitions for RFS Small Refinery Exemptions and June 2022 Denial of Petitions for RFS Small Refinery Exemptions (collectively) |
| DOE | United States Department of Energy |
| EPA Br. | Initial Brief for Respondent, ECF #2021394 |
| June Denial | June 2022 Denial of Petitions for RFS Small Refinery Exemptions, 87 Fed. Reg. 34873 (June 8, 2022) |
| June 2022 Alternative Compliance Action | June 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries, 87 Fed. Reg. 34872 (June 8, 2022) |
| Pet'rs Br. | Initial Joint Opening Brief of Petitioners, ECF #2003725 |
| RFS | Renewable Fuel Standard |
| RIN | Renewable Identification Number |
| SRE | Small Refinery Exemption |

**INTRODUCTION**

This Court is the only proper venue for reviewing Petitioners' judicial challenge to EPA's denial of their petitions for Small Refinery Exemptions ("SREs"). The Clean Air Act ("CAA") establishes the D.C. Circuit as the sole venue for challenging the "Denials" because EPA has correctly determined that they are "nationally applicable" and, alternatively, that they have nationwide scope or effect.

On the merits, this Court should reject Petitioners' challenges for several reasons.

First, EPA's approach to evaluating SRE petitions is not only reasonable, but also legally required. EPA appropriately revised its approach to correct two serious legal errors, as recognized by the Tenth Circuit decision finding that EPA's prior approach violated both the CAA and administrative law. EPA's current approach gives effect to the statutory requirement that SREs be available only to small refineries that demonstrate they "would be subject to a disproportionate economic hardship if required to comply" with their Renewable Fuel Standard ("RFS") obligations.

Second, EPA's Denials were sound on the record. The Denials reflect EPA's well-supported empirical finding that no small refineries demonstrated disproportionate economic hardship caused by RFS compliance because they can recoup their RFS compliance costs.  EPA reached that conclusion after considering

1

an array of empirical studies, consulting with the U.S. Department of Energy ("DOE"), considering DOE's 2011 study (as required), and accounting for all the information that individual small refineries submitted to EPA in support of their petitions.

Third, the Denials are not impermissibly retroactive. Petitioners conflate the standards for retroactive agency rulemakings and *adjudications*. Because SRE petitions are adjudications, EPA had no choice but to apply its current approach to deny Petitioners' SRE petitions. EPA had discretion to withhold only the retroactive *effect* of the Denials—i.e., their economic consequences—but only if necessary to protect settled expectations in a previously clear regime or to avert manifest injustice. Those conditions are not met. The approach Petitioners prefer contradicted EPA's previously articulated policy, was applied only during a brief period in nonpublic individual discretionary adjudications with no precedential force, and was immediately subject to judicial challenge before the 2018-2021 SRE petitions at issue were even filed—a challenge that ultimately proved meritorious.

Moreover, the Denials have no retroactive or prejudicial effect at all.  With respect to the 2017-2018 SRE petitions, EPA already fully withheld the Denials' effect by excusing Petitioners from having to retire any additional Renewable Identification Numbers ("RINs") to meet their RFS obligations for those years. That relief allows Petitioners to keep a windfall—the premium they received through the

2

sale of their petroleum without having to incur any offsetting RIN-compliance costs—even though that same windfall harms renewable-fuel producers and contravenes Congress's aim of using the RFS to increase the use of renewable fuel. Petitioners want the same treatment for their 2019-2021 obligations, but the denials did not impose new obligations; they merely confirmed preexisting obligations. Further, EPA gave Petitioners ample time and opportunity to conform their SRE petitions to EPA's current approach, and ample time to comply with their 2019-2021 RFS obligations after the Denials and before any penalties would be imposed. In contrast, as with the 2017-2018 SREs, withholding the Denials' effect of the 2019-2021 SREs would undermine the RFS program, and harm renewable fuel producers.

## JURISDICTION

These consolidated cases challenge final EPA action under the Clean Air Act, entitled *April 2022 Denial of Petitions for RFS Small Refinery Exemptions*, EPA-HQ-OAR-2021-0566-0106, 87 Fed. Reg. 24,300 (April 25, 2022), and *June 2022 Denial of Petitions for RFS Small Refinery Exemptions*, EPA-HQ-OAR-2021-0566-0117, 87 Fed. Reg 34,873 (June 8, 2022). This Court has jurisdiction under 42 U.S.C. §7607(b)(1).

## STATEMENT OF ISSUES

1.     Whether this Court is the only proper venue to hear challenges to EPA's April and June 2022 Denials of small refinery exemptions (the "Denials") because

the Denials are either "nationally applicable" or "Based on a determination of nationwide scope or effect" made and published by EPA.

2.      Whether the approach EPA applied in the Denials is authorized by the Clean Air Act.

3.      Whether the Denials are reasonable and reasonably explained in accordance with the Administrative Procedure Act.

4.      Whether the Denials are permissibly retroactive and consistent with Petitioners' due process rights.

## STATUTES AND REGULATIONS

All relevant statutes and regulations are contained in the principal parties' briefs.

## STATEMENT OF THE CASE

### A.    The Renewable Fuel Standard Program and Small Refinery Exemptions

Through the Renewable Fuel Standard ("RFS"), Congress established "mandatory and annually increasing quantities of renewable fuels that must be introduced into commerce … each year—and tasks the EPA Administrator with 'ensur[ing]' that those annual targets are met." *Growth Energy v. EPA*, 5 F.4th 1, 7 (D.C. Cir. 2021) (quoting 42 U.S.C. §7545(o)(2)(A)(i)). Congress allowed "small refineries" to "petition" EPA for "exemption[s]" from their RFS obligations "for the reason of disproportionate economic hardship," i.e., because the refinery "would be

4

subject to a disproportionate economic hardship if required to comply" with the RFS. 42 U.S.C. §7545(o)(9)(A)(ii)(II), (B)(i). The effect of an SRE is that the RFS obligations "shall not apply to [that] small refiner[y]" for that year. 42 U.S.C. §7545(o)(9)(A)(i).

In 2015, EPA found, based on an empirical study, that small refineries "recoup RFS compliance costs." *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206, 1255 (10th Cir. 2020) ("*RFA*"). EPA explained that, although small refineries incur "a direct and obvious cost in obtaining [Renewable Identification Numbers ('RINs')]," they "are generally able to recover the cost of meeting their RIN obligations in the price of their petroleum blendstocks," *Id.* at 1255 (quoting EPA-420-R-17-008-at-27) (alterations in original) (internal quotations omitted).

In December of 2016, EPA issued a guidance memorandum stating that it "may only grant such [Small Refinery Exemptions ('SRE')] petitions if … the small refinery will experience a 'disproportionate economic hardship' from compliance with its RFS obligations" and that it "evaluat[es] whether RFS compliance would cause the small refinery 'disproportionate economic hardship.'" EPA, Memorandum re Financial and Other Information to Be Submitted with 2016 RFS Small Refinery Hardship Exemption Requests 1-2 (Dec. 6, 2016), https://tinyurl.com/bdz3b24t ("2016 Memo"). The 2016 Memo also stated that "since 2011, … EPA has adopted the interpretation of disproportionate economic hardship set forth in the [Department

of Energy] Small Refinery Study," *id.* at 2, n.5, which in turn defined the task as "evaluat[ing] disproportionate economic hardship caused by the impact of compliance with the RFS on small refineries," accounting for "[t]he degree to which [RIN purchase costs] will be passed through." Off. of Pol'y & Int'l Aff., Dep't of Energy, Small Refinery Exemption Study: An Investigation into Disproportionate Economic Hardship 2, 22-23 (Mar. 2011).

## B.    The 2016-2018 SREs

In May of 2018, associations of biofuels producers, including some of the intervenors in this action, petitioned the Tenth Circuit to review three SREs that EPA had granted for 2016 and 2017. Petition for Review, *Renewable Fuels Ass'n v. EPA*, No. 18-9533 (10th Cir. filed May 29, 2018), ECF #10562569. Through that case, it became clear that, in granting those SREs, EPA had departed from the approach it had set forth in the 2016 Memo.

In June of 2018, EPA began receiving SRE petitions for compliance year 2018.   *See*   EPA-HQ-OAR-2021-0566-0119-at-7   ("June   2022   Alternative Compliance Action"). In August of 2019, EPA granted 31 of those petitions, including Petitioners'— applying the same approach it had newly applied to the three 2016-2017 SREs challenged in the Tenth Circuit case. *See* Pet'rs Br. 18-19. In October of 2019, a group of biofuels representatives, including some of the intervenors, petitioned the D.C. Circuit for review of the 31 2018 SREs. *See* Petition

6

for Review, *Renewable Fuel Ass'n v. EPA*, No. 19-1220 (D.C. Cir. filed Oct. 22, 2019), ECF #1812533.

On January 24, 2020, the Tenth Circuit vacated the three 2016-2017 SREs and remanded them to EPA. *RFA*, 948 F.3d at 1258. It held that the statute requires that RFS "compliance must be the cause of any disproportionate hardship," and that EPA had exceeded its statutory authority by "[g]ranting extensions of exemptions based at least in part on hardships not caused by RFS compliance." *Id.* at 1253-54. The court also held that it was arbitrary and capricious for EPA to have "ignored or failed to provide reasons for deviating from prior studies showing that" refineries "can recoup RFS compliance costs by passing them on to customers." *Id.* at 1255-57. Finally, the Tenth Circuit held that EPA had exceeded its statutory authority by granting SREs to refineries that were not exempt in all prior years; this aspect of the holding, however, was subsequently reversed by the Supreme Court. *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172 (2021).

After the Supreme Court ruled in *HollyFrontier*, the D.C. Circuit remanded the 31 2018 SREs to "allow EPA the opportunity to reconsider its action in light of [the Tenth Circuit's and Supreme Court's] intervening decisions." Motion for Voluntary Remand Without Vacatur, *Renewable Fuels Ass'n*, No. 19-1220 (D.C. Cir. Aug. 25, 2021), ECF #1911608, at 2; *id.* (D.C. Cir. December 8, 2021), ECF #1925942 (order granting EPA's motion to remand).

7

### C.    EPA's April and June Denials

In April of 2022, EPA denied 36 SRE petitions, including the SRE petitions at issue here (on remand from the D.C. Circuit). *April 2022 Denial of Petitions for RFS Small Refinery Exemptions*, EPA-HQ-OAR-2021-0566-0106, 87 Fed. Reg. 24,300 (April 25, 2022) ("April Denial"). "[I]n response to the conclusion of [the Tenth Circuit case] that addressed historical inconsistencies in EPA's treatment of SREs since 2011," EPA clarified its prior approach by correcting the two remaining errors identified by the Tenth Circuit in *RFA*—that EPA lacked the authority to consider hardships that were not the result of compliance with the RFS and that it was arbitrary and capricious for EPA to find disproportionate hardship without considering its prior findings that refineries small and large recover their RFS compliance costs. EPA-HQ-OAR-2021-0566-0106-at1-2. In June of 2022, EPA followed the same approach to deny 69 more SRE petitions for 2016-2021, including the three SREs that had been vacated by the Tenth Circuit in *RFA*. *June 2022 Denial of Petitions for RFS Small Refinery Exemptions*, EPA-HQ-OAR-2021-0566-0117, 87 Fed. Reg 34,873 (June 8, 2022) (together with the April Denial, the "Denials").

After the Denials, the impacted small refineries had "unmet 2016-2018 compliance obligations." EPA-HQ-OAR-2021-0566-0119-at-9, 17. To "mitigate" the supposed "burdens" of those restored obligations, EPA concurrently but separately determined that it would deem those refineries, which included some of

Petitioners' refineries, to be in compliance with their 2016-2018 obligations "without retiring any additional RINs." *Id.* at 2, 10-11. EPA referred to its forgiveness of the refineries' RFS obligations as an "alternative compliance demonstration approach." *Id.* at 2.

### D.    Judicial Challenges

After the Denials, a series of legal challenges ensued. Petitioners filed petitions for review in this Court challenging both the April and June Denials. *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1073 (D.C. Cir. filed May 4, 2022), ECF#1945539.

Additionally, various refineries have filed similar suits in other Circuit Courts of Appeal challenging the same actions with respect to their SRE petitions. *See, e.g.*, Petition for Review, *Calumet Shreveport Refin. Co., et al. v. EPA*, No. 22-60266 (5th Cir. Filed May 3, 2022); Petition for Review, *Hunt Refin. Co. v. EPA*, No. 22-11617 (11th Cir. filed May 12, 2022). The suits filed in the Third, Seventh, Ninth, and Tenth Circuits were either dismissed or transferred for lack of venue, in favor of the D.C. Circuit. *See* Motion to Consolidate Case[s], *Sinclair Wyo.*, No. 22-1073 (D.C. Cir. filed Oct. 31, 2022), ECF #1971464, at 7-12.  The Fifth and Eleventh Circuits are still deciding whether to hear the challenges filed in those courts.

## ARGUMENT

## I.    VENUE IS PROPER ONLY IN THIS COURT

This Court has exclusive venue to hear a petition for review of the Denials. EPA Br. 25-31. CAA §307(b)(1) provides that challenges to "nationally applicable regulations promulgated, or final action taken," by EPA "may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. §7607(b)(1). The Denials are "nationally applicable" for two reasons. First, the Denials rest on a statutory interpretation governing all pending, and future, exemption petitions, regardless of the petitioner's locations. *See* EPA-HQ-OAR-2021-0566-0119-at-20. Second, when it issued the Denials, EPA based its decision-making on an industry-wide empirical finding that small refineries recoup their RIN costs. *See* EPA-HQ-OAR-2021-0566-0106-at-11. The Denials reflect EPA's determination that, based on those national premises and a thorough analysis of all the refinery-specific evidence submitted to it, each individual small refinery failed to show that EPA's nationally applicable, industry-wide finding about RIN-cost recoupment did not apply to it.

EPA was also on firm ground determining that the challenged decisions have "nationwide scope or effect," for the same reasons and for a third one: the exemptions sought would have relieved the petitioners of their duty to meet a national standard, and thus would have reduced the national usage of renewable fuel.

10

This Court has interpreted CAA §307(b)(1) as a venue provision and not a jurisdictional provision, holding "that the apparent congressional purpose was to place nationally significant decisions in the D.C. Circuit." *Texas Mun. Power Agency v. E.P.A.*, 89 F.3d 858, 867 (D.C. Cir. 1996). Accordingly, where EPA asserts a timely objection to regional circuit review of a nationally applicable decision, those challenges must be transferred to the D.C. Circuit. *Id.* EPA has done so in each of the regional circuit challenges related to this case. *See* Motion to Consolidate Case[s], *Sinclair Wyo.*, No. 22-1073 (D.C. Cir. filed Oct. 31, 2022)

Allowing regional circuit review also would mean that potentially nine "circuit courts could rule on issues arising from a single, national EPA [action or] rule utterly defeating the statute's obvious aim of centralizing judicial review of national rules in the D.C. Circuit." *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 673 (7th Cir. 2017). That there are still three separate pending suits in three circuits challenging the same approach—the same interpretation and the same findings about RIN costs—highlights the serious risk of inconsistent and irreconcilable judgments, and thus the necessity of funneling judicial review into a single court, the D.C. Circuit. Consequently, this Court should be the only Circuit Court of Appeals to hear challenges to these Denials.

## II.    EPA'S APPROACH IS STATUTORILY REQUIRED

The Clean Air Act provides that EPA may grant an exemption only if the refinery "would be subject to a disproportionate economic hardship if required to comply" with the RFS. 42 U.S.C. §7545(o)(9)(A)(ii)(II).  EPA's interpretation of that provision—that to qualify for an SRE, a small refinery must suffer hardship *caused by RFS compliance*—is not only reasonable and the best interpretation, but it is also the *required* interpretation. *See RFA*, 948 F.3d at 1253-54; EPA Br. 44-53. Moreover, EPA's accounting for SRE petitioners' ability to recoup their RIN costs is required by administrative law.

Even if EPA's interpretation were not statutorily required, however, it would at least be reasonable and due deference.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  That is especially so because EPA's interpretation serves Congress's core purpose in creating the Renewable Fuel Standard: "[t]o move the United States toward greater energy independence and security, [and] to increase the production of clean renewable fuels." Energy Independence and Security Act of 2007, Pub. L. No. 110–140, December 19, 2007, 121 Stat. 1492. To the extent that this Court applies deference to EPA's interpretation, it should favor the reading of the statute that best promotes those goals that animated Congress's enactment of the RFS.

12

**A.    EPA's Statutory Interpretation and RIN Passthrough Finding Neither Eliminate nor Contravene the Statute's Exemption Provision**

Petitioners assert that EPA's statutory interpretation in the Denials "effectively eliminated statutory hardship exemptions." Pet'rs Br. at 36-39. Petitioners' assertion is groundless. EPA's statutory interpretation does not dictate a particular result for any SRE petition; it merely specifies a requirement: that the petitioner prove that complying with the RFS will cause it disproportionate economic hardship. Whether a petitioner can prove that is an empirical matter. Currently, EPA's best empirical analysis shows that small refineries do not actually suffer economic hardship as a result of meeting their RFS obligations because they can recoup their RIN costs. EPA Br. 44, 62-63. But EPA did not purport to reach that conclusion for all time. Rather, EPA left the door open for small refineries to refute that conclusion or to otherwise show that RFS compliance will cause them disproportionate economic hardship in the future. *See* 87 Fed. Reg. 54,158, 54,161 n.27 (Sept. 2, 2022).

Moreover, even if EPA's empirical finding persists—i.e., even if refineries will remain able to recoup their costs and will never be able to prove that compliance causes them disproportionate economic hardship—that would not render EPA's approach in conflict with Congressional intent as expressed in the statute. There is no record indicating that, at the time the SRE provision was enacted, Congress had

analyzed whether refineries could recoup their RFS compliance costs or that Congress had prescribed that SREs would continue to be granted perpetually. Instead, Congress provided for relief *if* it turned out that compliance with the RFS would inflict disproportionate economic hardship on small refineries. *HollyFrontier*, which Petitioners cites, does not hold otherwise. Pet'rs Br. 48; *see* 141 S. Ct. at 2181. There, the Supreme Court, examining different statutory language, ruled only that a small refinery could be eligible for an exemption in one year even if it did not receive an exemption in the prior year—and thus that Congress had not intended to sunset SREs as long as refineries meet the standard for SREs, not that refineries would in fact continue to meet the standard. *See HollyFrontier*, 141 S. Ct. at 2181.

Petitioners rely on *Mountain States Tel. & Tel.Co. v. Pueblo of Santa Ana,* which concerned a negative Congressional mandate (i.e., prohibition) that "[n]o right, title, or interest in or to the lands of the Pueblo Indians of New Mexico to which their title has not been extinguished…shall hereafter be acquired or initiated…in any other manner except as may hereafter be provided by Congress." *See* Pet'rs Br. 36; *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 237 (1985). Here, however, there is no Congressional or agency prohibition; Congress *granted* EPA the authority to issue SREs if the requisite showing is made to support a disproportionate economic hardship caused by the RFS. Nothing in the Denials has taken away that discretion.  If future petitioners demonstrate they face

14

disproportionate economic hardship caused by RFS compliance, EPA's statutory interpretation would not stand in the way of granting exemptions to RFS compliance.

## B.    EPA Did Not Redefine the Statutory Phrase "Disproportionate Economic Hardship"

Petitioners further argue that EPA "unlawfully redefined the key statutory term" of "disproportionate economic hardship" by equating "economic hardship" with "RFS compliance costs" without conducting a "holistic" analysis that accounts for "other economic factors." Pet'rs Br. 39, 46-49. EPA did no such thing. Rather, EPA "evaluated and considered many 'other economic factors,' including the dynamics and characteristics of the fuels and RIN markets, publicly available price data, confidential financial and other refinery-specific data submitted by the petitioning small refineries, and all the data other commenters submitted on the Proposed Denial." EPA-HQ-OAR-2021-0566-0117-at-18. After considering all that, EPA determined that RIN recoupment—one of those economic factors— conclusively showed the refineries do not suffer disproportionate economic hardship *because of* their RFS compliance, as statutorily required. *Id*. Thus, contrary to Petitioners' contention, Pet'rs Br. 46-49, the SRE Denials do not replace the "disproportionate economic hardship" inquiry with a more stringent inquiry, such as requiring "a threat of closure." *Sinclair Wyo.*, 887 F.3d at 997.

Petitioners next argue that EPA unlawfully inserted a vague severity requirement into the statute by insisting "that small refineries' 'compliance costs'

15

must be 'of sufficient magnitude to warrant the exemption.'" Pet'rs Br. 40. But while Petitioners cast the "sufficient magnitude" concept as replacing or adding to the statute's "disproportionate hardship" requirement, that language merely *reflects* the statutory "hardship" requirement. That is, EPA's attention to the magnitude of the disproportionate economic harm reflects the basic reality that some economic harms will be too small to qualify as a "hardship," as statutorily required, and so EPA rightly inquires whether the asserted economic harm is significant enough to rise to the level of *hardship*. *See* 42 U.S.C. §7545(o)(9)(B)(i).

## C. EPA Did Not Impermissibly Rely on the Tenth Circuit's Decision in *RFA*

Petitioners claim that EPA's reliance on *RFA* is a mistake of law. Pet'rs Br. 78. That is wrong. In *HollyFrontier*, the Supreme Court rejected only one of the Tenth Circuit's three independent grounds for invalidating EPA's prior approach. *See* Pet. for Certiorari at i, *HollyFrontier Cheyenne Refining Co. v. EPA*, 141 S. Ct. 2172 (2021). The Denials do not contradict *HollyFrontier;* rather, they reaffirmed the two intact holdings of the Tenth Circuit. And although the Tenth Circuit on remand vacated its judgment, it confirmed that those two rulings remained sound. Indeed, after the judgment was vacated on remand from *HollyFrontier*, EPA informed the Tenth Circuit that, absent contrary direction, it would "proceed in accordance with its current understanding" that "the alternate holdings in [*RFA*] were not addressed by the Supreme Court … remain in effect." *RFA*, No. 18-9533

16

(10th Cir. filed May 29, 2018), ECF #010110564301, at 6-7. The court did not disabuse EPA of its understanding. *Id.*, ECF #010110567206.

In any event, EPA did not adopt the Denial because it believed it was legally bound by *RFA*. Rather, EPA's analysis was "informed by the *RFA* opinion" but ultimately reflected EPA's independent judgment that *RFA*'s intact conclusions were correct. *See, e.g.*, EPA-HQ-OAR-2021-0566-0117-at-2, 18 ("EPA determined that the Tenth Circuit provided the best reading of the SRE statutory provisions. … EPA agrees that these holdings [in *RFA*] both reflect a better interpretation of the Act and comport with EPA's longstanding conclusions regarding RIN cost passthrough"). EPA was free to learn from and agree with *RFA*'s analysis, regardless of whether those portions of the court's opinion were vacated.

### D.    EPA's RIN Cost Passthrough Determination is Not New

Petitioners repeatedly refer to EPA's RIN passthrough analysis as a "new economic theory." Pet'rs Br. at ixv, 2, 6, 22, 76. The RIN passthrough theory, however, is far from new. EPA's conclusion that obligated parties pass through RIN costs dates back to a memorandum authored by the agency in 2015. *See* Dallas Burkholder, EPA Office of Transportation and Air Quality, EPA-HQ-OAR-2015-0111-0062, A Preliminary Assessment of RIN Market Dynamics, RIN Prices, and Their Effects (May 14, 2015). EPA reached the identical conclusion in its 2017 denial of petitions for rulemaking changes to the RFS, that obligated parties fully

17

pass through RIN costs and discounts to wholesale purchasers, and this Court upheld that decision. *Alon Refining Krotz Springs, Inc v. EPA*, 936 F.3d 628 (D.C. Cir. 2019) (finding that EPA "grounded that conclusion in studies and data in the record"). Bedrock principles of administrative law do not allow EPA to reverse its long-standing view concerning the economics of obligated parties recouping RINs without a new evidentiary finding to the contrary. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983) (holding an agency action is arbitrary and capricious when the agency "offered an explanation for its decision that runs counter to the evidence before the agency"). Here, no small refinery presented compelling evidence that RIN costs are not passed on to wholesale purchasers and ultimately recouped.

### E.    EPA Complied with its Obligation to Consult with DOE

Petitioners assert that EPA "failed to meaningfully consult with DOE, as the statute requires." Pet'rs Br. 77. But "[a]s long as EPA consults with DOE and considers the 2011 Study and other economic factors"—as it did here—"EPA retains substantial discretion to decide how to evaluate hardship petitions." *Hermes Consol., LLC v. EPA*, 787 F.3d 568, 575 (D.C. Cir. 2015). Indeed, EPA may not "blindly adopt [DOE's] conclusions" or rely on "facially[] flawed" DOE findings. *Ergon-West Virginia, Inc. v. EPA*, 896 F.3d 600, 610-13 (4th Cir. 2018); *accord United Refining Co. v. EPA*, 64 F.4th 448, 460 (3d Cir. 2023).

18

Petitioners acknowledge that DOE concurred with EPA's conclusions on the petitions, Pet'rs Br. 80, but apparently take issue with the scope of DOE's participation. The CAA, however, does not delineate the form that EPA's consultation with DOE must take or the actions EPA must take in response. 42 U.S.C. §7545(o)(9)(B)(i). Consequently, EPA's representation that it "consulted with DOE through discussions in meetings and phone conversations regarding the SRE petitions, the supplemental supporting information the small refineries provided, other comments submitted in response to the Proposed Denial, and the analysis and determinations that supply the basis for" the Denial is more than sufficient to satisfy its statutory consultation obligation. EPA-HQ-OAR-2021-0566-0117-at-25.

Petitioners also criticize EPA's decision not to adhere to the 2011 DOE Study and the related scoring matrix. Pet'rs Br. 79. But it was *DOE* that "did not apply the scoring matrix." EPA-HQ-OAR-2021-0566-0117-at-24. Moreover, EPA was required only to "consider" the study, 42 U.S.C. §7545(o)(9)(A)(ii)(I), and it did so, declining to follow the DOE study only after carefully examining it and concluding it rested on faulty assumptions. *See* EPA-HQ-OAR-2021-0566-0117 at 25-26. The CAA does not require EPA to credit a report it knows to be deficient.

19

**F.    EPA's Evaluation of the SRE Petitions Was Sufficiently Individualized**

Petitioners also contend that EPA failed to evaluate their SRE petitions on an individual basis. Pet'rs Br. 57-59. That is also wrong. Although the SRE Decisions expressly recite "overall findings" that small refineries, like all obligated parties, recoup their RFS compliance costs, EPA explained that that was "due to the confidential nature of much of the information included in the SRE petitions," not due to a lack of consideration of individualized evidence. EPA-HQ-OAR-2021-0566-0117-at-60. In fact, the Denials explain that EPA "reviewed the information in the petitions and the supplemental information provided by small refineries in their comments" and that EPA's "responses to any refinery-specific data" are presented in the "confidential, refinery-specific appendices" attached to the Decision. *Id.* at 209-10. EPA concluded that "nothing presented in [the supplemental information submitted by Petitioners or any other disappointed refinery] le[d] [EPA] to conclude that the small refineries are affected by RFS compliance differently than other obligated parties or that they are not able to pass along RFS compliance costs to wholesale purchasers." *Id.* at 211.

In other words, EPA made an industry-wide finding about RIN-cost recoupment, then examined all refinery-specific information that was submitted, and determined that none of that individualized evidence warranted a different conclusion with respect to any petitioner. That is a sound and sufficiently

20

individualized adjudication of Petitioners' SRE petitions. There is no further individualized analysis that EPA could have engaged in, and Petitioners identify none. And certainly, the formality of issuing one decision document covering numerous petitions does not violate the statute. Indeed, the original decision to grant Petitioners and others' 2018 petitions—which Petitioners praise—was similarly issued in a single document covering numerous petitions by various refineries. *See* EPA-HQ-OAR-2021-0566-0077.

## III.  EPA'S DECISIONS ARE NOT IMPERMISSIBLY RETROACTIVE AND DO NOT VIOLATE PETITIONERS' DUE PROCESS RIGHTS

Petitioners' retroactivity and due process arguments reflect the wrong governing standard, a mistaken understanding of the history of EPA's SRE policy, and confusion about the effects of the Denials.

Because administrative adjudications are inherently retroactive, EPA was required to adjudicate Petitioners' SRE petitions under its current approach. Although an agency may withhold the retroactive *effect*—i.e., "economic consequences"—of a new policy under very limited circumstances, those circumstances are absent here. Moreover, EPA's prior approach was not a clear, settled rule on which Petitioners could have reasonably relied. Rather, it had been applied only in nonprecedential adjudications, contradicted EPA's previously articulated policy, was subject to judicial review before Petitioners filed their SRE petitions, and was plainly unlawful, as the Tenth Circuit thereafter held. Moreover,

EPA gave Petitioners ample opportunity to conform their petitions to the approach EPA ultimately applied in the Denials, and then ample time to comply with their RFS obligations after the Denials. Additionally, EPA completely relieved Petitioners of their 2017-2018 RFS obligations following the denial of their SRE petitions for those years, even though such relief was at odds with the RFS program's purpose of increasing the use of renewable fuel and would correspondingly harm renewable-fuel producers. Extending that relief to 2019-2021 would only amplify those harms to the RFS program and renewable-fuel producers.

### A.    Because the Denials Were Adjudications, EPA Had to Apply its Current Approach

Petitioners invoke case law involving retroactive rulemaking, *see, e.g.*, Pet'rs Br. 88-92 (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-58 (2012); *Howmet Corp. v. EPA*, 614 F.3d 544, 553 (D.C. Cir. 2010); *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995); *Williams Nat. Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993)), but as the Petitioners acknowledge, Pet'rs Br. 61, the Denials are administrative "adjudication[s]," not a rulemaking. June 2022 Denials 5-6, 73; *see Sinclair Wyo. Refin. Co. v. EPA*, 887 F.3d 986, 992 (10th Cir. 2017). Therefore, a different standard for retroactivity applies.

"[I]t is black-letter administrative law that adjudications are inherently retroactive." *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 (D.C. Cir. 2013); *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 763-66

22

(1969) (administrative adjudication must involve retroactive application of rule, or else it would be rulemaking); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 224 (1988) (Scalia, J., concurring) (*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (shows that "retroactivity is not only permissible but standard" in adjudication because that "deals with what the law was; rulemaking deals with what the law will be"); *Clark-Cowlitz Joint Operating Agency v. F.E.R.C.*, 826 F.2d 1074, 1081 (D.C. Cir. 1987) (en banc); *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 539 (D.C. Cir. 2007). Consequently, when "a rule [is] announced in an agency adjudication, … the rule itself … *must* have retroactive effect"; an agency can announce a prospective rule only through the rulemaking process. *Catholic Health*, 718 F.3d at 922 (emphasis supplied). Therefore, EPA had to apply its exemption policy to Petitioners' exemption petitions.

      In contrast, an agency "may" withhold a rule's "retroactive effect," i.e., its "economic consequences," but only under very limited circumstances: "where the adjudication substitutes new law for old law that was reasonably clear and where doing so is necessary to protect the settled expectations of those who had relied on the preexisting rule," *Catholic Health*, 718 F.3d at 922 (cleaned up), or "when to do otherwise would lead to manifest injustice," *Qwest*, 509 F.3d at 539 (cleaned up); *see also Judulang v. Holder*, 565 U.S. 42, 63 n.12 (2011) (administrative adjudications not "impermissibly retroactive" because agency's "prior practice

[was] so unsettled"); *Bowen*, 488 U.S. at 224 (Scalia, J., concurring) ("where no pre-existing interpretive rule … is in effect,  nothing prevents the agency from acting retroactively through adjudication").  As explained in Section III.C., below, although none of those circumstances appears present in the earlier Denial, EPA's concurrent decision to essentially forgive Petitioners' RFS obligations undermines any argument by Petitioners that they may have been harmed by the retroactive effect of EPA's earlier Denial.

### B.    Petitioners Could Not Have Reasonably Relied on EPA's Prior Approach Because It Was Neither Clear Nor Settled

A new rule threatens settled expectations only if the old rule was "consistent" and "well-established," *Williams Natural Gas Co. v. FERC*, 3 F.3d 1544, 1554 (D.C. Cir. 1993) (cleaned up), was "authoritatively articulated outside of the same … proceeding in which it was eventually reversed," *Verizon Telephone Companies v. FCC*, 269 F.3d 1098, 1110 (D.C. Cir. 2001), and had been "judicially confirmed," *id*.  Similarly, one factor in assessing manifest injustice is "whether the new rule represents an abrupt departure from well established practice."  *Clark-Cowlitz*, 826 F.2d at 1081 (cleaned up).  But there was no established prior policy of crediting hardships not caused by RFS compliance or of disregarding RIN-cost recoupment on which Petitioners could have relied, let alone have relied reasonably.

As EPA has acknowledged, when Petitioners submitted the SRE petitions at issue, EPA's approach to evaluating them had been "inconsisten[t]." EPA-HQ-

24

OAR-2021-0566-0107-at-1. Before Petitioners submitted their 2017 and 2018 SRE petitions, EPA's last public articulation of its policy was its 2016 Memo, which, as described above, aligned with the policy announced in the 2022 and 2023 Denials on the key issues: disproportionate economic hardship must be caused by RFS compliance and disproportionate economic hardship analysis must account for RIN-cost recoupment.

In contrast, Petitioners' favored approach was applied only in 2017 and 2018, when EPA granted the 2016-2018 exemptions that were challenged in the Tenth and D.C. Circuits. June Compliance Action at 7; *see Renewable Fuels*, 948 F.3d at 1226. Petitioners could not have justifiably relied on that short-lived approach because it never acquired any authoritative status. First, there is "no legal authority … to support carving out an exception to the rule of [adjudicative] retroactivity based … on an agency interpretation so briefly embraced." *Clark-Cowlitz*, 826 F.2d 1074, 1084 (D.C. Cir. 1987). Second, those SRE decisions "were neither published nor even publicly acknowledged." *Advanced Biofuels Ass'n v. EPA*, 792 F. App'x. 1, 3 (D.C. Cir. 2019). Third, "EPA retains substantial discretion to decide how to evaluate hardship petitions," *Hermes Consolidated, LLC v. EPA*, 787 F.3d 568, 575 (D.C. Cir. 2015); *accord United Refining Co. v. EPA*, 64 F.4th 448, 459 (3d Cir. 2023), and small refineries "had no entitlement or legitimate expectation" in such relief in the future, *Schwartz v. FERC*, 578 F.2d 417, 419 (D.C. Cir. 1978); *see also*

*Monroe Energy, LLC v. EPA*, 750 F.3d 909, 920 (D.C. Cir. 2014) ("The statute set the renewable fuel obligation, and Monroe Energy had no legally settled expectation that EPA would exercise its waiver authority to reduce that obligation.").  Indeed, given that "the *status quo ante* was … a case-by-case assessment with a highly uncertain outcome," any "reliance" on that approach "was badly misplaced." *Cassell v. FCC*, 154 F.3d 478, 486 (D.C. Cir. 1998).  And fourth, those SRE decisions "ha[d] no precedential value" for anyone—neither for "third parties" (who would not have known about them anyway) nor "even for the [recipient] refiner"— "since each petition must be resolved on a case-by-case basis." *Sinclair Wyo.*, 887 F.3d at 992.

Moreover, Petitioners' preferred approach was never settled because it was immediately subjected to serious legal cloud.  The *RFA* case was filed in the Tenth Circuit in mid-2018 challenging the first round of SRE grants under that approach (covering 2016 and 2017 SRE petitions)—and before any of the 2018-21 SRE petitions at issue here were submitted.  *Compare* Petition for Review, *Renewable Fuels Ass'n*, No. 18-9533 (10th Cir. May 29, 2018), ECF #10562569, *with* Pet'rs Br. 18-19. In addition, the lawsuit challenging EPA's second round of SRE grants under that approach (covering the 2018 SRE petitions at issue here) was filed before all but one Petitioner had submitted their 2019-2021 SRE petitions. *See Renewable Fuels Ass'n v. EPA*, No. 19-1220 (D.C. Cir. filed Oct. 22, 2019). "[O]nce the issue

26

was expressly drawn into question[,] … [one] could [not] possibly find that [the refineries] reasonably relied upon" the prior approach. *Qwest*, 509 F.3d at 540 (cleaned up).

Finally, Petitioners could not reasonably have relied on their preferred approach because it was plainly infirm legally, as later explained by the Tenth Circuit. *See supra* at 6-7. The Tenth Circuit reached that conclusion in January of 2020, *id.*, before Petitioners filed their SRE petitions for 2020 and 2021, *see* Pet'rs Br. 18.

The authority that Petitioners rely upon is inapposite. In *McDonald*, for example, the Court found that the revised policy was "an abrupt departure" because the agency had followed the prior interpretation through multiple authoritative statements and in practice over the preceding decade and had never contradicted that position. 653 F.2d at 1037, 1039-1040, 1045.

In short, Petitioners could not have had a settled, legally protected expectation that EPA would apply Petitioners' preferred approach in evaluating Petitioners' 2018-2021 SRE petitions. Tellingly, 23 of the 31 refineries that petitioned for a 2018 SRE did not rely on the approach EPA had used in granting the 2016-2017 SREs, but instead chose to retire RINs to comply with their 2018 obligations fully or partially while awaiting EPA's decision on their petitions. *See* EPA-HQ-OAR-2021-0566-0119-at-7.

## C.    The Denials' Have No Retroactive Effect Anyway, But Regardless, Their Effect Will Not Prejudice Petitioners

The Denials also have no retroactive effect to be withheld, and their effect is not prejudicial to Petitioners.  Administrative adjudication has "retroactive" effect only if "the rule itself effected a clear change in the legal landscape and attached new legal consequences to past actions." *Catholic Health*, 718 F.3d at 921.  As just explained, the Denials did not effect a clear change in the legal landscape.  Moreover, they did not attach new legal consequences to past actions.  First, the Denials have no retroactive effect with respect to Petitioners' 2017-2018 obligations because EPA already relieved Petitioners of their duty to retire any more RINs to meet those obligations through the April and June Compliance Actions.[1]  Second, the Denials have no retroactive effect with respect to any of the obligations at issue because the Denials did not require Petitioners to go back in time and use more renewable fuel or penalize them for not having already acquired and retired the requisite RINs. They merely confirmed that the previously set RFS obligations still applied, and that therefore Petitioners had to—in the future—retire the number of RINs corresponding to those obligations based on the amount of transportation fuel that Petitioners

---

[1] In a separate pending case, Intervenor Growth Energy has challenged EPA's legal authority to take an "alternative compliance approach" with respect to an unsuccessful SRE petition. *See* Br. for Growth Energy, *Sinclair Wyoming Refining Co. v. EPA*, No. 22-1074 (D.C. Cir. Aug. 28, 2023), ECF #2014355, at 18-26; Reply for Growth Energy, *Sinclair Wyoming Refining Co. v. EPA*, No. 22-1074 (D.C. Cir. Aug. 28, 2023), ECF # 2014358, at 6-15.

already introduced into commerce. *Cf. Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1227 (D.C. Cir. 2018) (where FERC's proposed action would "retroactively impose a rate increase for power already sold" (cleaned up) (internal quotations marks omitted)), but rather merely require Petitioners to acquire the specified number of RINs in the future, to the extent they had not already done so, and retire them to show compliance.

Additionally, EPA ensured that its approach would be only prospective by giving Petitioners ample meaningful notice and time at every turn. For example, Petitioners claim to have relied upon EPA's prior approach when they prepared their hardship petitions. Pet'rs Br. 31, 75. Such reliance would have been unreasonable for all the reasons stated above, but in any event, Petitioners' claimed reliance is not credible. Several months before denying Petitioners' SRE petitions, EPA publicly announced its intention to adopt the approach it eventually applied. *See* 86 Fed. Reg. 70,999 (Dec. 14, 2021). In that announcement, EPA invited "comment on all aspects of this proposed denial, most notably" on the key feature of the policy it was clarifying: its "conclusions that the CAA requires small refineries to demonstrate that [disproportionate economic hardship] is caused by compliance with the RFS program[, its] economic analyses concluding that no small refineries face such disproportionate costs of compliance due to the RFS program," and its "findings regarding RIN cost passthrough." 86 Fed. Reg. at 71,000. EPA also solicited

29

"additional data that would show the relationship between RFS compliance costs and the price of transportation fuel blendstocks." *Id*. EPA also directly invited the refineries, including Petitioners, to submit supplemental information relevant to EPA's proposed approach; Petitioners obliged with supplemental submissions. EPA Br. 98-99. EPA therefore afforded Petitioners notice and ample opportunity to conform their SRE petitions to EPA's approach.

EPA also gave Petitioners "ample notice that [they] would need to accumulate RINs to meet" their obligations and ample time to acquire those RINs. *NPRA*, 630 F.3d at 163. Specifically, EPA provided an extended and orderly schedule for Petitioners to comply with their associated obligations after the April and June 2022 Denial decisions: Petitioners were not required to demonstrate compliance with their 2019 obligations until September 1, 2022 (and could carry forward any 2019 deficit to the 2020 deadline); were not required to begin demonstrating compliance with their 2020 obligations until February 2023 or to complete compliance until February 2024; and were not required to demonstrate compliance with their 2021 obligations until March 2023. *Alternative RIN Retirement Schedule for Small Refineries,* 87 Fed. Reg. 54,158, 51,462 (Sept. 2, 2022); EPA Br. 19. That is plenty of time for Petitioners to acquire enough RINs to meet their obligations (to the extent they had not already done so). *See* 87 Fed. Reg. at 54,161, 54,162; 87 Fed. Reg. 80,582, 80,605 (Dec. 30, 2022). Therefore, as in prior RFS situations, because EPA issued

30

its Denials "well before the [effective] compliance demonstration deadline, … [it] did not change the legal effect of a completed course of conduct" and thus the Denials were not "retroactive." *Monroe Energy*, 750 F.3d at 920. For all these reasons, EPA is also correct that the Denials did not infringe upon any due process right of Petitioners. *See* EPA Br. 31-43.[2]

If the notice and time to comply EPA afforded Petitioners were insufficient, EPA also mitigated the Denials' effect by "preserv[ing]" a bank of 1.8 billion carryover RINs for Petitioners "to comply with their 2020, 2021, and 2022 obligations." June Alternative Compliance Action at 14-15; *see NPRA*, 630 F.3d at 164-165 (availability of carryover RINs mitigates any harm from retroactive obligations). On top of that, EPA provided Petitioners "a broader range of RIN vintages" to meet their 2020 obligations; whereas ordinarily a RIN is valid only during the year of generation and the following year, EPA is allowing Petitioners to use RINs from 2019-2024 to meet their 2020 obligations. 87 Fed. Reg. at 54,160.

Petitioners claim to have relied on EPA's prior approach to "determine their compliance strategy." Pet'rs Br. 31. But Petitioners do not claim that they

---

[2] Moreover, the "fair notice" doctrine Petitioners invoke, Pet'rs Br. 88, applies to legislative action (*see, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)) and to punitive action (*see, e.g.*, *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1330 (D.C. Cir. 1995); *FCC v. Fox Tel. Stations, Inc.*, 567 U.S. 239, 253-58 (2012)), but does not preclude retroactivity in adjudication. Regardless, as explained above, EPA afforded ample notice.

determined the amount of renewable fuel to use or the amount of RINs to acquire in reliance on EPA's prior approach. Even if they had, however, such a "frustrat[ion]" of their "expectations … cannot furnish a sufficient basis for identifying impermissibly retroactive rules." *Nat'l Petrochem. & Refiners Ass'n v. EPA*, 630 F.3d 145, 159, 161 (D.C. Cir. 2010) ("*NPRA*").

Moreover, to the extent Petitioners have not already acquired RINs for 2019-2021 compliance (or 2017-2018), they have enjoyed a "financial *benefit* through the sale of [their] petroleum fuel that includes the value of the RIN but no associated RFS compliance costs." EPA-HQ-OAR-2021-0566-0117-at-29 (emphasis supplied). Having to meet their RFS obligations will simply eliminate that windfall. Petitioners nonetheless complain that because of EPA's "delays," they will have to pay more for the RINs than the premium they received through the sale of their earlier petroleum fuels, meaning they will not recoup the difference. Pet'rs Br. 14-15. But RIN prices rose principally because EPA denied more SRE petitions than the market expected it to, constricting the RIN supply relative to demand, not because EPA denied the petitions *retroactively* or at a particular moment in time. Further, any marginal difference in RIN prices has no legal significance. As the data cited by the Petitioners shows, RIN prices fluctuate, *see* Pet'rs Br. 24, and Petitioners could not have had a settled expectation that they would remain below a certain

32

level. Indeed, RIN prices today could have been lower, giving Petitioners a windfall even after meeting their obligations.

EPA concluded that had Petitioners collected RINs ratably during the compliance years—i.e., acquired the appropriate number of RINs concurrently with their introduction of petroleum fuel into commerce—they would have recouped their costs. *See* EPA-HQ-OAR-2021-0566-0117-at-67-69. Thus, Petitioners' paying more now for RINs is a consequence of their own business decision to "gamble" that they would eventually be exempted or that RIN prices would fall in the meantime; it certainly "was not a sure bet" and not a risk for which the law provides protection. *Cassell*, 154 F.3d at 486; *see also Qwest*, 509 F.3d at 540 (stating "that a party may have relied on its own (rather convenient) assumption that unclear law would ultimately be resolved in its favor is insufficient to defeat the presumption of retroactivity when that" does not pan out).

Petitioners evidently believe, however, EPA was required to *completely eliminate* the 2019-2021 obligations through an alternative compliance action like the one EPA used to relieve Petitioners of their 2017-2018 obligations. *See* Pet'rs Br. 91. Even if EPA has the authority to issue such an action, EPA properly declined to do so with respect to Petitioners' 2019-2021 obligations. *See* 87 Fed. Reg. at 54,162-63. As EPA explained, unlike with respect to the 2017-2018 obligations, the "compliance period" for 2019-2021 "remains open," affording "both an opportunity

33

for continued RIN acquisitions and retirements, as well as sufficient RINs available to demonstrate compliance." EPA-HQ-OAR-2021-0566-0119-at-18.[3]

Lastly, Petitioners assert that EPA was "require[d]" to "'minimize the hardship caused to obligated parties by virtue of EPA's delay.'" Pet'rs Br. 93 (quoting *ACE*, 864 F.3d at 718, 719, 721). That is wrong for two reasons. First, *ACE* required only that EPA "adequately consider[] various ways to" minimize the hardships of retroactivity, if any. 864 F.3d at 718-19, 721. Second, *ACE*'s standard governs retroactive *rulemaking*, which as discussed above, does not apply here.

### D. Withholding the Denials' Retroactive Effect Would Undermine the Congressional Interests Behind the RFS Program

EPA withholding the Denials' retroactive effect for 2019-2021 would undermine the "statutory interest in applying [the] new rule." *Clark-Cowlitz*, 826 F.2d at 1081 (cleaned up).

Congress enacted the RFS "in order to 'move the United States toward greater energy independence and security' and 'increase the production of clean renewable fuels.'" *ACE*, 864 F.3d at 697 (quoting Pub. L. 110-140, 121 Stat. 1492 (2007)). To achieve these goals, "Congress intended the Renewable Fuel Program to be a market

---

[3] Petitioners mention the Ninth Circuit's holding in *Kern Oil & Refin. Co. v. EPA*, 2022 WL 3369528 (9th Cir. Aug. 16, 2022), that EPA had to compensate a small refinery for the delay in adjudicating its SRE petition, but that case is nothing like this one. Unlike Petitioners, Kern had complied with its RFS obligations while its SRE petition was pending, and then EPA granted the petition. Accordingly, EPA was obligated to give Kern the full benefit of its exemption. *See id.* at *1.

forcing policy that would create demand pressure to increase the consumption of renewable fuel." *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 568 (D.C. Cir. 2019) ("*AFPM*") (quotation marks omitted).

SREs undermine the achievement of these goals by reducing the amount of renewable fuel that is blended into the U.S. gasoline supply each year, *AFPM*, 937 F.3d at 571, which is why Congress authorized EPA to grant SREs only when refineries met specific statutory requirements. As EPA determined correctly, the Denials would "increase demand for renewable fuels in the future." EPA-HQ-OAR-2021-0566-0107-at-14 ("April 2022 Alternative Compliance Action"), which directly advances Congress's goals. *Id.*; *Americans for Clean Energy v. EPA*, 864 F.3d 691, 697 (D.C. Cir. 2017).

Moreover, because "[w]ithholding retroactive application [of the Exemption Denials] would grant [the refineries] a … benefit to which [EPA] now believes [they are] not entitled"—the release from their unmet RFS obligations—non-retroactivity would "not … fulfill[]" the "overriding Congressional interest" in providing for exemptions only when the statutorily specified conditions are met. *Clark-Cowlitz*, 826 F.2d at 1085; *see also* Br. for Growth Energy, *Growth Energy v. EPA*, No. 22-1126 (D.C. Cir. Apr. 10, 2023), ECF #1994071, at 18-26.

### i.     Withholding the Denials' Retroactive Effect Would Harm Renewable Fuel Producers

Additionally, withholding the Denials' retroactive effect would be inappropriate because it "would impose an equal burden" on others, *Aliceville Hydro Assocs. v. FERC*, 800 F.2d 1147, 1153 (D.C. Cir. 1986); *see Qwest*, 509 F.3d at 540, namely, renewable-fuel producers. Every RIN that the Denials would require Petitioners to retire "is matched by an equal and opposite los[t gallon of renewable fuel] that non-retroactivity … would inflict on" renewable-fuel producers. *Qwest*, 509 F.3d at 540.

Specifically, withholding the Denials' effect would harm the producers of renewable fuel used to comply with the RFS program. The RFS volume requirements define the national "demand" for renewable fuel. *ACE*, 864 F.3d at 705; *Monroe Energy*, 750 F.3d at 917. By relieving certain obligated parties of their RFS obligations, SREs depress the demand for renewable fuel, "creat[ing]" a "renewable-fuel shortfall." *AFPM*, 937 F.3d at 568, 571. Any RINs that would otherwise be used to meet those exempted or relieved obligations become available to meet future RFS obligations in place of physical volumes of renewable fuel, thereby suppressing the use of renewable fuel in that future year.

The Tenth Circuit acknowledged as much in *RFA* when it found that producers of renewable fuels had standing to sue EPA based on EPA's approval of extension of SREs, writing that "[c]onstituents of the Biofuels Coalition have established an

36

injury in fact in the form of lower prices, lower revenues, or increased competition with respect to the renewable fuels those constituents market and sell." *RFA*, 948 F.3d at 1214. In issuing the Denials, EPA balanced the interests of all interested parties. Reversing EPA's issuance of the Denials would amount to this Court substituting its judgment for the reasoned judgment of the agency.

## CONCLUSION

Petitioners' petitions for review should be denied.

Dated: November 1, 2023                    Respectfully submitted,


                                           /s/ *Matthew W. Morrison*

DAVID M. LEHN                              MATTHEW W. MORRISON
BOIES SCHILLER FLEXNER LLP                 CYNTHIA COOK ROBERTSON
1401 New York Ave, NW                      SHELBY L. DYL
Washington, DC 20005                       PILLSBURY WINTHROP SHAW PITTMAN LLP
(202) 274-1126                             1200 Seventeenth Street NW
                                           Washington, DC 20036-3006
*Counsel for Growth Energy*                (202) 663-8036
                                           matthew.morrison@pillsburylaw.com
                                           shelby.dyl@pillsburylaw.com

                                           *Counsel for Renewable Fuels Association,*
                                           *Growth Energy, American Coalition for*
                                           *Ethanol, National Farmers Union, and*
                                           *National Corn Growers Association*

37

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,544 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because hit has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

Dated: November 3, 2023                    */s/ Matthew W. Morrison*
                                            Matthew W. Morrison

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 1, 2023                    /s/ *Matthew W. Morrison*
                                           Matthew W. Morrison