# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| SINCLAIR WYOMING REFINING COMPANY LLC, ET AL.,<br><br>                    Petitioners,<br><br>        v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>                    Respondent. | No. 22-1073<br><br>(and consolidated cases) |

## CALUMET'S MOTION FOR STAY PENDING APPEAL[1]

EPA unlawfully delayed for *years* in determining whether to grant Calumet Montana Refining, LLC ("Calumet") hardship relief from Renewable Fuel Standard ("RFS") compliance for 2019-2020. When EPA finally acted, it reversed relief previously granted for 2018, ignored the Department of Energy's ("DOE") recommendation of relief, and conjured up a new "interpretation" of the Clean Air Act ("CAA") and "economic theory" of how the refining industry operates that *eliminates* hardship relief. EPA's new worldview means hardship relief should *never* be granted, even though Congress passed a law saying otherwise and the Supreme Court ruled that hardship relief must remain available to small refineries.

---

[1] EPA opposes this Motion for Stay. Per FRAP 18(a)(1), Calumet requested a stay from EPA pending judicial review. EPA has not responded.

EPA's new approach is unsound and unlawful, and that is not just the view of an interested party. In November 2022, the U.S. Government Accountability Office ("GAO") released a damning report that sharply criticizes EPA's RFS flipflop as based on flawed reasoning and deficient evidence.[2] And EPA's unlawful actions have increased RFS compliance costs over 1,200%.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Calumet has a strong likelihood of success in showing EPA's denials were arbitrary and unlawful. The RFS compliance years in question are over; the amount of biofuel blended in past years cannot be changed. No environmental impacts are at issue—only whether EPA's unlawful actions are ████████████████████████████████████. There is nothing EPA can place on the balance of equities that weighs against irreparable harm to Calumet if forced to comply with unlawful administrative action while this appeal is pending.

---

[2] U.S. Government Accountability Office, Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program, GAO-23-104273 (Nov. 2022) ("GAO Report").

This Court has broad authority to avoid that harm by staying EPA's denial and Calumet's attendant compliance obligations pursuant to its authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §705, or its mandamus authority under the All Writs Act, 28 U.S.C. §1651. Last month the Eleventh Circuit granted another small refinery's motion to stay its RFS compliance obligations pending judicial review of EPA's denial of hardship relief, quoting 5 U.S.C. § 705 ("[T]he court to which a case may be taken on appeal from . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.").[3] This motion should be granted to avoid irreparable harm to Calumet, its employees, and the community that depends on them.

## BACKGROUND

### A. Calumet's refinery in Great Falls, Montana.

Calumet converts crude oil into transportation fuel. Decl. ¶2. It directly employs approximately 230 people, pays salaries and wages far above average for the region, and is deeply involved in its community. *Id.* ¶¶28-29. Calumet's presence is responsible, directly and indirectly, for employment of an additional 3,000 Montanans. *Id.* ¶28.

---

[3] Order, *Hunt Refin. Co. v. EPA*, No. 22-12535 (11th Cir. Dec. 27, 2022), Doc. 33.

USCA Case #23-1177    Document #2012203    Filed: 08/14/2023    Page 4 of 27

### B.    The RFS program and small refinery hardship relief.

**RFS program.** Congress amended the CAA to establish the RFS in 2005 and 2007. 42 U.S.C. §7545(o); *see* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat 594; Energy Independence and Security Act of 2007, Pub. L. No. 110–140, 121 Stat 1492. The CAA establishes annual volumes of four categories of renewable fuel for blending into transportation fuels (gasoline and diesel) sold in the United States. §7545(o)(2)(B)(i)(I)-(IV).[4] Congress told EPA to promulgate regulations "to ensure that transportation fuel sold or introduced into commerce in the United States … on an annual average basis, contains at least the applicable volume of renewable fuel" set by statute. §7545(o)(2)(A)(i).

"Obligated parties" meet volume targets by complying with annual Renewable Volume Obligations ("RVOs"). §7545(o)(3)(B)(ii)(I); 40 C.F.R. §§80.1406-07. Obligated parties demonstrate compliance using blending credits called RINs. 40 C.F.R. §80.1427. RINs are created when biofuel is manufactured. *Id.* §80.1426. RINs remain "attached" to the physical volume of biofuel until blended into petroleum-based fuel, when RINs are "separated." *Id.* §§80.1428-29. "Separated" RINs are used for compliance. *Id.* §80.1427.

 "Many obligated parties"—especially small refineries—"do not have access to renewable fuels or the ability to blend them, and so must

---

[4] All citations to the U.S. code are to Title 42 unless otherwise noted.

USCA Case #23-1177    Document #2102209    Filed: 03/14/2025    Page 5 of 27

use credits to comply." 72 Fed. Reg. 23,900, 23,904 (May 1, 2007). Those that cannot self-generate enough RINs are forced to buy RINs from others. RINs have a limited shelf-life; they can be used for compliance for the year in which they are generated or the next. §7545(o)(5)(C). "RIN markets are highly volatile." GAO Report at 48.

**Small refinery hardship relief.** "[B]ecause of the inherent scale advantages of large refineries," Congress worried about the RFS burdening small refineries.[5] *Sinclair Wyo. Refin. Co. v. EPA*, 887 F.3d 986, 989 (10th Cir. 2017). Congress provided an annual "safety valve" for small refineries, *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2182 (2021), relieving compliance "for the reason of disproportionate economic hardship," §7545(o)(9)(B)(i). Small refineries can petition for relief "at any time." *Id.* EPA must decide each petition "not later than 90 days after" receipt. §7545(o)(9)(B)(iii).

To evaluate hardship petitions, EPA must, in "consultation" with DOE, "consider the findings" of a congressionally mandated DOE study of "whether compliance … would impose a disproportionate economic hardship on small refineries." §§7545(o)(9)(A)(ii)(I), 7545(o)(9)(B)(ii). In that 2011 study, DOE found that small refineries "have particular obstacles that would make compliance more costly than those of large

---

[5] "'[S]mall refinery' means a refinery for which the average aggregate daily crude oil throughput for a calendar year … does not exceed 75,000 barrels." §7545(o)(1)(K).

integrated companies," developed a scoring matrix "to evaluate the full impact of disproportionate economic hardship on small refiners," and concluded many small refineries should be exempt.[6]

### C. DOE repeatedly recommended, and EPA repeatedly granted, hardship relief to Calumet.

Since 2011, EPA has "relied on DOE's findings" of disproportionate economic hardship based on application of DOE's "scoring matrix." June 2022 Denial of Petitions for RFS Small Refinery Exemptions ("June Denials") at 24, 87 Fed. Reg. 34873 (June 8, 2022).[7] If the score "exceed an established threshold," the refinery was experiencing disproportionate economic hardship and DOE recommended relief. *Id.* at 13.

Following the required statutory process, EPA granted Calumet's petitions for hardship relief every year for which it applied. Decl. ¶4. For both 2019 and 2020, DOE again concluded Calumet would suffer disproportionate economic hardship and recommended relief. *Id.* ¶¶5, 22.

---

[6] DOE, Small Refinery Exemption Study: An Investigation into Disproportionate Economic Hardship ("2011 DOE Study") at 3, 32, 37, www.epa.gov/sites/default/files/2016-12/documents/small-refinery-exempt-study.pdf.

[7] EPA published notice of the April and June Denials in the Federal Register. The full text of the April Denials can be found at https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1014EG4.pdf and June Denials at https://www.epa.gov/system/files/documents/2022-06/420r22011.pdf. Citations use the pagination of the documents on EPA's website.

### D. EPA retroactively changes its approach.

#### 1. EPA grants Calumet's 2018 hardship petition.

EPA initially granted hardship relief to over 30 small refineries, including Calumet, for the 2018 compliance year. Decl. Exhibit A. Biofuel industry groups challenged EPA's grants, but that challenge was held in abeyance pending resolution of *HollyFrontier*.

#### 2. EPA's reversal of Calumet's 2018 hardship exemption.

After the Supreme Court decided *HollyFrontier*, EPA requested voluntary remand of the 2018 grants. *See* April 2022 Denial of Petitions for RFS Small Refinery Exemptions ("April Denials") at 16, 87 Fed. Reg. 24300 (Apr. 25, 2022).[8] EPA then flip-flopped and retroactively denied all 2018 hardship petitions, including Calumet's. April Denials at 1, 20. EPA adopted a new interpretation of the CAA, abandoned the scoring matrix DOE used for over a decade, and imposed an "economic theory" that eliminates hardship relief forever. June Denials at 23-24, 30.

EPA's new "economic theory" is that "the RFS program cannot cause [disproportionate economic hardship]" because RIN costs are equal for all obligated parties and fully passed through to customers. *Id.* at 11-12. That theory depends on the further assumption that obligated parties purchase RINs "ratably"—in real-time throughout the compliance year. *Id.* at 55.

---

[8] *See* note 7.

EPA used its new "theory" to deny Calumet's previously granted 2018 hardship exemption. EPA later admitted it "made no unique or individualized findings as to the ability of [Calumet] to recover the costs of RFS compliance, and EPA did not adjust its statutory interpretation and economic theory to the particulars of any specific small refinery." EPA's Mot. to Transfer Pet. for Review to D.C. Circuit or Dismiss Based on Improper Venue at 16, *Hunt Refin. Co.,* No. 22-12535 (11th Cir. Aug. 23, 2022), Doc. 10.

### E.  EPA denies Calumet's 2019-2020 hardship petitions.

Less than two months later, EPA issued an identical decision denying Calumet's petitions for 2019 and 2020. June Denials at 20.

Calumet petitioned for hardship relief for 2019 on November 1, 2019, and for 2020 on December 18, 2020. Decl. ¶3.  EPA's statutory deadlines to decide Calumet's petitions were January 30, 2020, and March 18, 2021, respectively. §7545(o)(9)(B)(iii). EPA ignored those deadlines and waited to announce 69 pending hardship decisions the same day, June 3, 2022—deciding Calumet's petitions as much as *over two years late*. Decl. ¶10.

### F.  EPA's flipflop causes RIN prices to skyrocket.

The agency's extreme tardiness necessitated EPA delaying annual compliance deadlines repeatedly. *See, e.g.*, Extension of 2019 and 2020 Renewable Fuel Standard Compliance and Attest Engagement Reporting Deadlines, 86 Fed. Reg. 17073 (April 1, 2021). Small refineries were left

in limbo for years until their hardship petitions were decided in June 2022.

EPA's actions caused RIN prices to skyrocket. On November 30, 2018—the day EPA set 2019 volumes—the price of 2019 ethanol RINs was only $0.145.[9] On December 2, 2019—the first business day after EPA was required to set 2020 volumes—the price of 2020 ethanol RINs was just $0.205.[10] But on June 3, 2022—when EPA announced the June Denials—the prices of 2019 and 2020 ethanol RINs were both $1.60,[11] an increase of *over 1,200%*.[12] 2021 and 2022 ethanol RINs are similarly expensive—$1.63 and $1.61, respectively.[13]

Despite knowing RIN prices had increased exponentially, EPA denied all 69 pending hardship petitions the same day. June Denials at 1. EPA's actions increased demand for a limited supply of RINs, further increasing prices and exacerbating RIN scarcity. Calumet now faces ███████ ███████ in compliance costs under compressed deadlines beginning February 1, 2023, during arguably the worst RIN market in history. ███████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████

---

[9] OPIS End-of-Day Ethanol Assessment Report (Nov. 30, 2018).
[10] *Id.* (Dec. 2, 2019).
[11] *Id.* (June 3, 2022).
[12] Decl. ¶10 n.9.
[13] OPIS End-of-Day Ethanol Assessment Report (June 3, 2022).

## STANDARD OF REVIEW

The standard for granting a motion to stay an administrative order pending appeal is the same used to assess motions for stays of district court orders. *Nken v. Holder*, 556 U.S. 418, 433-36 (2009). "[A] court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at 425-26 (citation omitted). "The first two factors of the traditional standard are the most critical." *Id.* at 434. The last two factors "merge" into a single public interest factor "when the Government is the opposing party." *Id.* at 435.

In addition to staying the denial and EPA's attendant enforcement power, this Court has equitable authority to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[]," *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1288 (D.C. Cir. 2007) (quoting 28 U.S.C. § 1651(a)), including relief "intended to maintain a status quo or preserve the relative positions of the parties" pending appeal. *Sherley v. Sebelius*, 689 F.3d 776, 781-82 (D.C. Cir. 2012).

## ARGUMENT

Calumet is likely to succeed on the merits. First, EPA's new "statutory interpretation" violates the language and structure of the CAA. Second, EPA applies its new approach retroactively, without Congressional

authorization or fair notice. Third, EPA's denial is arbitrary and capricious because it is based on a flawed assumption and incomplete assessment, as GAO recently concluded.

EPA's denial will ███████████████████████████████████

███████████████, RINs are a wasting asset; Calumet's compliance costs will be unrecoverable by the time this appeal is resolved—both clear-cut cases of irreparable harm. EPA's denial also does not serve the public interest—it harms Calumet's employees and community, undermines American energy independence, and increases consumer prices at the pump by ███████████████████████████████████████.

Staying Calumet's compliance obligations pending appeal will not impact the amount of biofuels for 2019 and 2020, which were blended and sold years ago. In contrast, forcing Calumet to comply with unlawful RFS obligations during this appeal will cause immediate harm to Calumet, its employees, the Great Falls community, and the local fuels market—harm from which they will be unable to recover even after Calumet ultimately succeeds in this appeal.

## I. Calumet is likely to succeed on the merits.

EPA's denial of Calumet's 2019-2020 hardship petitions is contrary to law, arbitrary, and capricious in multiple ways, some of which are described below and any one of which requires vacatur.

### A. EPA rewrites the statute.

EPA's goal is undoubtedly to eliminate the small refinery hardship exemption Congress created. To do so, the agency attempts to rewrite the statute.

**First, EPA eliminated individual adjudications.** EPA claims the June Denials are "a single action" that "is comprised of the adjudications of 69 petitions." June Denials at 1. But EPA did not perform 69 individual adjudications and then announce them in a single document. Rather, EPA concedes it "made no unique or individualized findings as to the ability of any of the sixty-nine petitioning small refineries" and did not consider "the particulars of any specific small refinery." E.g., Mot. to Transfer at 16, *Wynnewood Refin. Co. v. EPA*, No. 22-60425 (5th Cir. Sept. 8, 2022), Doc. 00516465312. EPA's action is fundamentally inconsistent with the statute.

Congress requires EPA to adjudicate hardship petitions on an individual basis. §7545(o)(9)(B). Under the statute, "***A*** small refinery may at any time petition" for hardship relief "for the reasons of disproportionate economic hardship." §7545(o)(9)(B)(i) (emphasis added). EPA must evaluate each petition to determine whether "***a*** petition" demonstrates hardship. §7545(o)(9)(B)(ii) (emphasis added). In giving EPA a deadline for deciding petitions, Congress spoke in the singular: "not later than 90 days after ***the*** receipt of ***the*** petition." §7545(o)(9)(B)(iii) (emphasis added). As EPA acknowledged, evaluation of a hardship petition must be based on

"data, contracts, and other information" received "from small refineries" relevant to their *individual* petitions. June Denials at 26.

Congress also built the individualized nature of adjudicating hardship petitions into the structure of the statute. When Congress created the RFS, it provided automatic, blanket hardship relief to all small refineries through 2011. §7545(o)(9)(A)(i). Then it instructed EPA to extend that exemption for "not less than 2 additional years" to any small refineries DOE's study determined would suffer "disproportionate economic hardship." §7545(o)(9)(A)(ii). When that extension expired, Congress put the onus on small refineries to petition for relief. §7545(o)(9)(B). They must show "disproportionate economic hardship" on an individual, refinery-specific basis. *Id.* To evaluate those petitions in accordance with the statue, EPA's decisions must be individual and refinery-specific.

EPA's failure to make individual, refinery-specific determinations is not remedied by lip-service assertions that it "reviewed all the information the small refineries and other interested parties submitted." June Denials at 18. By its own admission, EPA's approach "render[ed] irrelevant most or all local factors." EPA's Reply in Support of Mot. to Transfer at 7, *Wynnewood Refin. Co.*, No. 22-60425 (5th Cir. Sept. 26, 2022), Doc. 00516485084. Instead, EPA used its new "economic theory" to conclude it is "*unlikely* any one refinery would face disproportionate cost of compliance." June Denials at 18-19 (emphasis added). EPA did not *actually* evaluate whether *Calumet* experienced disproportionate economic

13

USCA Case #23-1177   Document #2013850   Filed: 04/19/2023   Page 24 of 27

hardship, which the statute plainly requires. §7545(o)(9)(B). Such disregard for the statute requires EPA's denials to be "set aside." 5 U.S.C. §706(2)(A).

**Second, EPA narrows the statutory considerations.** Congress conditioned hardship relief on determining whether "a small refinery … would be subject to disproportionate economic hardship" after "consider[ing] the findings of the [DOE] study … and other economic factors." §7545(o)(9)(A)-(B). EPA applies a different, much narrower standard in the June Denials, requiring small refineries to "demonstrate how [their] specific RFS compliance costs are disproportionate compared to other refineries' RFS compliance costs." June Denials at 17. This impermissibly reduces the "findings of the [DOE] study" and "other economic factors" the CAA requires EPA to consider, §7545(o)(9)(B)(ii), to a single factor. EPA cannot "take[] the holistic evaluation required by Congress and morph[] it into a single question." S*inclair*, 887 F.3d at 997. But that is precisely what EPA did here.

EPA also tries to smuggle a severity requirement into the statute, insisting disproportionality must be "of sufficient magnitude to warrant the exemption." June Denials at 17. But the statute says nothing of the sort. If a small refinery suffers economic hardship—whether due to RFS compliance costs, "other economic factors," or some combination of both—that is greater relative to hardships faced by larger refineries, then it has demonstrated "disproportionate economic hardship" under the CAA, and

14

EPA must grant an exemption. §7545(o)(9)(B). Years ago, EPA tried to impose a similar severity requirement on "disproportionate economic hardship," but the Tenth Circuit rejected it as contrary to "the meaning and purpose of the statute." S*inclair*, 887 F.3d at 996-99.

The upshot of EPA's rewrite is to render the hardship exemption a nullity. Indeed, EPA has acknowledged its intent to *never* grant small refinery hardship relief again. *See* June Denials at 63; EPA, *Renewable Fuel Standard (RFS) Program: Alternative RIN Retirement Schedule for Small Refineries*, 87 Fed. Reg. 54158, 54161 n.27 (Sept. 2, 2022). EPA cannot effectively repeal small refinery hardship relief; no level of judicial deference permits an agency to do that.

Eradication of hardship relief is also foreclosed by *HollyFrontier*. The Supreme Court interpreted the CAA to require ongoing availability of hardship relief and rejected arguments for the exemption's demise. 141 S. Ct. at 2180-81. In ruling Congress did not intend for the hardship exemption to sunset, the Court reasoned that "[i]f Congress really had wanted all exemptions to cease," it "surely [chose] an odd way to achieve it." *Id.* at 2180. It is even more absurd for EPA now to contend that the hardship relief enacted by Congress is unattainable and, under EPA's current view, was *never* attainable.

### B. EPA applied new standards retroactively without sufficient notice or congressional authorization.

Even if EPA's new approach to hardship relief were somehow permissible going forward, EPA did not provide fair notice of these drastic changes, violating Calumet's due process rights. "A fundamental principle in our legal system," enshrined in the Due Process Clause, "is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-58 (2012). Notice is fair if it allows regulated parties "to identify, with *ascertainable certainty*, the standards with which the agency expects [them] to conform." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995), *as corrected* (June 19, 1995) (emphasis added).

If an agency "wishes to use [its new] interpretation to cut off a party's right, it must give full notice of its interpretation." *Satellite Broad. Co. v. FCC*, 824 F.2d 1, 3-4 (D.C. Cir. 1987), *as amended* (July 7, 1987). Regulated parties cannot be expected "to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158-59 (2012).

Retroactive application of a new legal standard is unlawful if a party conformed its conduct to a prior legal regime. *See, e.g.*, *Air Transport Ass'n v. CAB*, 732 F.2d 219, 227-28 (D.C. Cir. 1984); *Patel v.*

*INS*, 638 F.2d 1199, 1203-04 (9th Cir. 1980); *Natural Gas Pipeline Co. v. FERC*, 590 F.2d 664, 668 (7th Cir. 1979); *Drug Package, Inc. v. NLRB*, 570 F.2d 1340, 1346-47 (8th Cir. 1978). In addition, courts disfavor retroactivity when the agency is merely effectuating a change in policy, not correcting a legal error. *See Gun South, Inc. v. Brady*, 877 F.2d 858, 859, 862 (11th Cir. 1989). "[T]he more an agency acts like a legislator—announcing new rules of general applicability—the closer it comes to the norm of legislation and the stronger the case becomes for limiting application of the agency's decision to future conduct." *De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015) (Gorsuch, J.).

Here, Calumet did not receive constitutionally adequate notice that hardship relief would cease to exist, making retroactive application of EPA's new interpretation unlawful. *First*, under the statute, EPA should have decided Calumet's hardship petitions long ago (90 days after receipt). §7545(o)(9)(B)(iii). But EPA delayed deciding Calumet's 2019-2020 petitions until long after those compliance years were over, only to retroactively apply a new interpretation in June 2022 to petitions that would have been granted under EPA's interpretation at the time the petitions were submitted.

*Second*, Calumet conformed its conduct to the prior legal regime. At the time Calumet submitted its petitions, EPA relied on the DOE Study and scoring matrix to adjudicate hardship petitions. Thus, Calumet conformed its petitions to those criteria and reasonably relied on the

availability of hardship relief to its detriment. Calumet had previously received hardship relief every year for which it applied, and it reasonably believed that would continue for 2019-2020. Decl. ¶4. Indeed, DOE's scoring of Calumet's petitions shows that Calumet would have received hardship exemptions for 2019–2020 if EPA had applied its prior approach. *Id*. ¶5. The 2019-2020 calendar years are long over, and biofuel blending in those years has already occurred. EPA achieves *nothing* by applying its new interpretation retroactively, except inflicting more economic hardship on Calumet.

*Third*, EPA switched interpretations merely to effectuate a change in policy, not to correct legal error. EPA acknowledges the CAA does not require its new interpretation, asserting only that it is a "better interpretation" of the statute, not the correct one. June Denials at 17-18.

If this Court were to conclude that the June Denials are a legislative rule, the retroactivity question is even more clear cut. EPA does not have "'the power to promulgate retroactive rules unless'" Congress conveyed that power "'in express terms.'" *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 379 (D.C. Cir. 2020) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). No such express terms were used in the CAA, and "the APA prohibits retroactive rulemaking." *Treasure State Res. Indus. Ass'n v. EPA*, 805 F.3d 300, 305 n.1 (D.C. Cir. 2015) (citing 5 U.S.C. §551(4), defining a "rule" as "an agency statement of general or particular applicability and future effect").

Case 1:21-cv-01289 Filed 01/19 Page 19 of 27

## C. EPA's denial is arbitrary and capricious, and GAO agrees.

Even if EPA's new approach were not contrary to the statute and unlawfully retroactive, it would still be arbitrary and capricious. EPA denied hardship relief based on its new "economic theory" that supposedly makes it "unlikely" any small refinery can experience disproportionate economic hardship. June Denials at 18-19.

EPA's reliance on its "RIN cost passthrough" hypothesis to deny Calumet's hardship petitions is arbitrary and capricious because it is based on a false premise. EPA claims small refineries "will recover the cost of the RINs they purchase in the sales price of the petroleum fuel they sell" if they "choose to purchase the RINs they need for compliance on a ratable basis." June Denials at 55. "Conversely, obligated parties that choose to delay RIN purchases … may recover more or less than the price they paid for RINs in the sales price of the petroleum fuel they sell, depending on whether the RIN price on the purchase date is higher or lower than the RIN price on the date the petroleum fuel is sold." *Id.*

But as EPA concedes, purchasing RINs ratably is not required by statute or regulation, nor has it ever been a condition of small refinery hardship relief. Indeed, EPA explicitly endorsed foregoing ratable RIN purchases. Decl. ¶26, Exhibit I, EPA 2016 Hardship Decision at 1 ("Obligated parties need not acquire RINs at the same time that they produce or import fuel but may, if they choose, simply purchase the required

19

number of RINs by the end of the compliance period, once their annual production is known.").



. RIN prices have now skyrocketed since the biofuels associated with 2019-2020 RINs were blended,

It is arbitrary and capricious for EPA to deny Calumet's hardship petitions based on the *assumption* that it is "unlikely" a small refinery "would face a disproportionate cost of compliance" when Calumet presented refinery-specific evidence proving that Calumet in fact did.

GAO recently confirmed EPA's denial is fundamentally flawed. GAO issued a comprehensive report following a multi-year investigation into EPA's "implementation of the small refinery exemption program," including the June Denials of "all pending petitions for compliance years 2019 through 2021." GAO Report at 2, 9. The report is damning. GAO concluded that EPA's June Denials rely on a "flawed assumption and an

incomplete assessment," such that EPA "ma[d]e decisions on small refinery exemptions without quality information and, therefore, risk[ed] inappropriately denying valid exemption petitions" like Calumet's. *Id.* at 9. It is therefore abundantly clear that Calumet will succeed on the merits.

## II. EPA's unlawful denial will irreparably harm Calumet.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ Absent a stay, Calumet will suffer irreparable harm.

The power to stay agency action is necessarily the power to stay its consequences, and the direct consequence of EPA's unlawful denial of hardship relief is ███████████████████████████████████████

█████████████████████████ This Court has broad authority under the APA to "issue all necessary and appropriate process ... to preserve status or rights pending conclusion of the review proceedings" "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." 5 U.S.C. §705. This Court also has authority to stay Calumet's compliance obligations under the All Writs Act, which "empowers

a federal court to employ procedures necessary to promote the resolution of issues in a case properly before it." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978); *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) ("[T]he All Writs Act empowers a federal court to issue writs of mandamus necessary to protect its prospective jurisdiction." (cleaned up)). This Court should use its equitable powers under the Act "to protect" its jurisdiction from "agency conduct" that "make[s] later merits review impossible," *Pub. Citizen*, 489 F.3d at 1288, and "preserve the relative positions of the parties." *Sherley*, 689 F.3d at 781-82.

Additionally, EPA can fine out-of-compliance parties up to "$25,000 for every day of such violation." §§7545(d)(1), 7413(c). EPA adjusts that statutory penalty for inflation—the daily penalty is currently $51,796 per violation. 40 C.F.R. §19.4. Because RFS compliance is based on the calendar year, out-of-compliance parties are immediately exposed to 365 days' worth of penalties for each of the four RVOs at issue—some $75.6 million per year. In other words, Calumet could be liable for massive penalties *plus* exorbitant RIN costs.

Forcing Calumet "to face ruinous penalties" without "some real opportunity to challenge [this] administrative action" violates its due process rights. *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115, 1119 (2d Cir. 1975). And "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable

injury.'" *Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (citation omitted).

Finally, even if ███████████████████, the RINs Calumet would have to purchase would be expired and worthless when returned after resolution of this appeal, making such costs unrecoverable. Suffering costs "that cannot later be recovered" is irreparable harm. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011); *Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (where there is no mechanism to recover damages after the fact, paying taxes is irreparable harm).

## III. The public interest favors granting a stay.

There is "no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Instead, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (citation omitted).

The public has an interest in preserving small refineries. Calumet is critical to Great Falls and the region. It employs hundreds of people, pays compensation and benefits far above average, and is deeply involved in the community. Decl. ¶¶28-32.

Staying Calumet's compliance obligations will not harm anyone or the environment. The biofuels in the years at issue have already been blended; a stay will not reduce production or blending by a single drop. EPA has repeatedly delayed actions and postponed deadlines under the

RFS; it has no legitimate basis to now claim that staying Calumet's compliance obligations will cause any harm.

## CONCLUSION

This Court should stay Calumet's RFS compliance obligations pending resolution of this appeal.

USCA Case #23-1069   Document #1986380   Filed: 01/24/2023   Page 25 of 27

Dated:  January 24, 2023

Respectfully submitted,

*s/ Jonathan G. Hardin*
_____

Jonathan G. Hardin
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6297
Facsimile:  202.654.6211
JHardin@perkinscoie.com

Eric B. Wolff
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone:  206.359.3779
Facsimile:  206.359.9000
EWolff@perkinscoie.com

Karl J. Worsham
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
KWorsham@perkinscoie.com

Attorneys for Calumet Montana Refining, LLC

USCA Case #22-1238    Document #1982019    Filed: 01/24/2023    Page 26 of 27

## CERTIFICATE OF COMPLIANCE

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,165 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used for the word count.

Dated:  January 24, 2023

_s/ Jonathan G. Hardin_
Jonathan G. Hardin
PERKINS COIE LLP

# CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  January 24, 2023

 *s/ Jonathan G. Hardin*
Jonathan G. Hardin
PERKINS COIE LLP